Peter J. BRENNAN, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellant,

v.

LAUDERDALE YACHT BASIN, INC.,
and Glen H. Friedt, Individually,
Defendants-Appellees.

No. 73-1056.

United States Court of Appeals,
Fifth Circuit.

April 26, 1974.

Carin Ann Clauss, U. S. Dept. of Labor, Richard F. Schubert, Sol. of Labor, Donald S. Shire, Atty., U. S. Dept. of Labor, Washington, D. C., Beverley R.

Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., Edwin G. Salyers, Sandra P. Bloom, Attys., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

John L. Britton, Miami, Fla., for defendants-appellees.

Before BELL, COLEMAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

■ This is a Fair Labor Standards Act case involving yacht salesmen at the defendants' marina and boat yard. The salesmen work irregular hours and are paid strictly on a commission basis. The District Court held there could be no violations of the minimum pay and overtime provisions of the Act because the total commissions paid to the salesmen annually were sufficient to include the $1.60 statutory minimum for all hours up to forty a week and time and a half or $2.40 for all overtime hours. Holding that the District Court erroneously equated the minimum wage with the regular rate of pay in deciding whether overtime might be due under the Act, we reverse and remand for further proceedings.

Section 7(a) of the Act requires that an employee must receive compensation for hours worked in excess of forty per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a)(1). The District Court thought there could be no violation of the Act if the employee's actual compensation was more than what his annual earnings would be if computed at the statutory minimum wage and overtime compensation rates for the hours worked.

These people are not the people that [the FLSA] was designed to protect. . . . [I]f Mr. Johnson had been paid the minimum wage, assuming he worked 50 hours a week, [for] 42 weeks out of the year, he was paid so far in excess of any standard hourly wage, at twice the minimum. His

overtime was way over what the minimum overtime would be.

■ The Court thus focused on only one purpose of the Act: to raise substandard wages. Another fundamental purpose of the Act is to spread employment, induce worksharing, through the financial pressure applied when time and a half regular pay is required for overtime work. In Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), the Supreme Court reviewed this Congressional purpose in interpreting Section 7(a) of the Act to require overtime compensation at time and a half regular pay, where that pay is above the minimum, as well as where the regular pay is at the minimum:

"[O]ne of the fundamental purposes of the Act was to induce worksharing and relieve unemployment by reducing hours of work." We agree that the purpose of the Act was not limited to a scheme to raise substandard wages first by a minimum wage and then by increased pay for overtime work. Of course, this was one effect of the time and a half provision, but another and an intended effect was to require extra pay for overtime work by those covered by the Act even though their hourly wages exceeded the statutory minimum. The provision of § 7(a) requiring this extra pay for overtime is clear and unambiguous. It calls for 150% of the regular, not the minimum, wage. By this requirement, although overtime was not flatly prohibited, financial pressure was applied to spread employment to avoid the extra wage and workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the Act. . . . The existence of such a purpose is no less certain because Congress chose to use a less drastic form of limitation than outright prohibition of overtime. We conclude that the Act was designed to require payment for overtime at time and a half the regular pay, where that pay is above the minimum, as well as

where the regular pay is at the minimum.

316 U.S. at 577–578. *See* Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944).

The concept that the overtime compensation requirements of the Act are not met when the employer merely pays compensation in excess of that computed at the minimum rates has been consistently upheld:

> Petitioner urges that it complied with the overtime compensation requirements of the Act because respondents received wages in excess of the statutory minimum wage, including time and one-half of that minimum wage for all overtime hours, which wages respondents impliedly agreed included overtime compensation by accepting them. A similar argument was squarely rejected in Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 93, 63 S.Ct. 125, 87 L.Ed. 83 (1942). *See* Nunn's Battery & Electric Co. v. Goldberg, 298 F.2d 516 (5th Cir. 1962).

The District Court's misapplication of the law erroneously terminated the Government's case without a decision on the controlling issues. The Secretary of Labor filed this suit pursuant to 29 U.S.C.A. § 217 to enjoin the Lauderdale Yacht Basin, Inc. from violating the minimum wage, overtime, and recordkeeping requirements of 29 U.S.C.A. § 206(a)(1) and 207(a)(1) and to restrain the continued withholding of unpaid overtime compensation due certain of its salesmen for the year 1970. The case was tried to the District Court on a stipulation of issues:

(a) Whether or not those persons working at defendants' establishment in connection with the selling of boats, yachts and other seagoing vessels were employees of the defendants or were independent contractors.

(b) If said persons referred to above were employees of the defendants, did the defendants compensate these employees in accordance with the minimum wage and overtime requirements of the Act and keep proper records of the number of hours worked by said persons.

(c) If said persons were employees and were not compensated in accordance with the Act, the amounts due these employees in back wages.

(d) Whether or not the Court should enjoin future violations of the defendants and restrain further withholding of back wages.

■ The difficult issue in this case revolves around the irregularity of payments to defendants' employees, who were paid only if and when they earned commissions by selling yachts. We decline, however, to render an opinion at this juncture as to the proper formula to be used in such a case. We decide only that an employer is not in effect exempt from the payment of additional overtime merely because the annual payment an employee receives exceeds minimum wage and minimum rate overtime payments. We cannot properly decide the other issues in the case, because the trial court made no findings of fact. On remand, the issues specifically stipulated for trial should be decided.

■■ First, a determination should be made as to whether the affected salesmen are employees of the Lauderdale Yacht Basin or whether they are independent contractors. Since the purpose of the Act was to provide coverage for employees engaged in interstate commerce, Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), a factual finding that the salesmen are not employees would preclude further inquiry. The Act would not be applicable.

Second, if the salesmen are found to be employees, the District Court must consider the terms of the employment arrangement. Specifically, it must be determined if the parties agreed that the commissions earned would include

compensation for any overtime worked during the pay period.

Third, the District Court must determine if the employee-salesmen worked in excess of forty hours per week and, if so, the number of excess hours worked. There can be no violation of 29 U.S.C.A. § 207 pertaining to overtime if no overtime hours were worked.

Fourth, if any employee-salesman did work overtime the District Court must determine if the yacht basin compensated him in accordance with the requirements of the Act. To do this, the District Court must necessarily determine the salesman's regular rate of pay from which the hourly rate of overtime compensation is computed. The "regular rate" under the Act is an hourly rate even though the employee may receive commission earnings which are computed on other than an hourly basis. The regular rate is determined "by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.-109 (1971). This case, however, presents difficulties in applying the formula due to the number of variables involved: fluctuating compensation, fluctuating pay intervals, and deferred compensation which may be difficult to identify as being earned in particular workweeks. The District Court must sort through these variables and adopt some "reasonable and equitable method" to allocate the commission "among workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." 29 C.F.R. § 778.120 (1971). In this regard, although invited to do so, we express no opinion as to the correctness of the Government's proposal that the interval from commission payment to commission payment be used for computation, or whether the trial judge's annual interval might be appropriate, or whether some other interval is more reasonable and equitable. The District

Court must initially make such a determination which will then be subject to review under the same standard as other trial court decisions based upon reasonableness and equity.

Answers to the remaining issues concerning the amount of back pay due each salesman and the necessity of enjoining future wage and hour law violations by the company will flow from these prior determinations.

Reversed and remanded.