Ray **MARSHALL, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**SCHOOL BOARD, HERMITAGE SCHOOL DISTRICT.**

No. 78–2110.

United States Court of Appeals, Third Circuit.

Argued Feb. 21, 1979.

Decided June 1, 1979.

Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Lois G. Williams, Kerry L. Adams (argued), and Eleanor Jen-kins, Attys., U. S. Dept. of Labor, Washington, D. C., for appellant.

Donald R. McKay (argued), Cusick, Madden, Joyce & McKay, Sharon, Pa., for appellee.

Before ROSENN, VAN DUSEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

In this appeal, the plaintiff Secretary of Labor challenges the district court's conclusion that certain female employees of the defendant Hermitage School District did not perform work "equal" to similar work performed by more highly paid male employees, within the meaning of the Equal Pay Act, 29 U.S.C. § 206(d)(1).[1] The Secretary of Labor, on behalf of the District's female "cleaning" personnel, sought to enjoin the District from violating the Equal Pay Act and to recover two years' unpaid wages for such employees. After a non-jury trial, the district court entered a final judgment of dismissal. We affirm in part, but modify the district court's order with respect to two female employees who had actually replaced a more highly paid male employee without receiving the higher wage.

The question presented in the district court was whether the School District's "cleaning women" and its more highly paid "maintenance men," both doing similar but not identical tasks on the afternoon shift, performed "equal work."[2] The dis-

---

[1] The Equal Pay Act of 1963 was incorporated into the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219, as an amendment to § 6 of that Act. The Equal Pay Act, 29 U.S.C. § 206(d)(1), provides:

"(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

[2] Although there was testimony that custodial employees were assigned at the time of hiring to the "cleaning" and "maintenance" positions solely on the basis of sex, this action involved

trict court found that the "maintenance" work required more skill and more responsibility than the "cleaning" work, that it thus was not equal under the terms of the Act, and that the difference justified the men's higher wages. After careful review of the record, we conclude that this finding was not clearly erroneous under the standard of F.R.Civ.P. 52(a).

■ However, the district court also found that for limited periods two individual female employees had actually filled vacancies in the maintenance position usually held by men, yet that these two women did not receive the higher wage. Therefore, we conclude that it was error to deny these two female employees wages equal to those which male employees would have received.[3]

The events giving rise to the present controversy are not disputed. The School District employed Robert A. Nye as the afternoon shift maintenance man in the District's junior high school from 1965 to December 1973. Nye then transferred to the afternoon shift at the senior high school for one year, where he performed the same job. In December 1974, he was reassigned to the junior high school to reassume his former position there. A woman replaced Nye on each occasion, first at the junior high school when he transferred from that school to the senior high school, then at the senior high school when he transferred back to the junior high school.

First, the district court found that "Mrs. [Camille] Martin worked as Nye's replacement for a year," 774a, at the junior high school from December 1973 to December 1974.[4] When Nye was reassigned to the

junior high school, Mrs. Martin returned to her former cleaning position at the school. She was never paid the higher "maintenance" position wage during the year she filled Nye's position.

Likewise, the district court found that after Nye was reassigned to the junior high school, "the regular late afternoon maintenance job [at the senior high school] was temporarily being performed by Mrs. [Lovella L.] Adams, pending the location of a qualified maintenance person," 776a. Mrs. Adams filled Nye's position at the high school for 14 months, from January 1975 to March 1976, yet continued to earn only the lower "cleaning" wage.

The district court's findings show that the School District's action regarding Mrs. Martin and Mrs. Adams directly contravened 29 C.F.R. § 800.114(c) (1978), which provides:

"The statute is intended to eliminate sex as a basis for wage differentials between employees performing equal work on jobs within the establishment, and if the rates paid for the same jobs are lower when occupants of the jobs are of one sex than they are when the jobs are filled by employees of the opposite sex, such discrimination within the establishment is equally in violation of the statutory prohibition whether or not employees of both sexes are employed in such jobs at the same time. Accordingly, where an employee of one sex is hired or assigned to a particular job to replace an employee of the opposite sex, comparison of the newly assigned employee's wage rate with that of the replaced former employee is required for purposes of section 6(d)(1),

---

no charges of discrimination in hiring under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17.

**3.** Counsel for the parties have conceded that *Dickerson v. United States Steel Corp.,* 582 F.2d 827, 831 (3d Cir. 1978), has no application to deny the court jurisdiction to decide this action, based on a federal statute, 29 U.S.C. § 217, in favor of two of the District's employees since it is not governed by F.R.Civ.P. 23. See letters to the Clerk of March 2, 1979, and March 7, 1979.

**4.** The trial court's findings continued as follows:

"At some point she asked for higher wages and when they were refused, she filed a grievance under the terms of the union contract of 1973, but she did not pursue the grievance. Instead, she filed a complaint with the Secretary of Labor which led to an investigation and this complaint."

774a.

whether or not the job is performed concurrently by employees of both sexes. *For example, if a particular job which in the past has been performed by a male employee becomes vacant and is then filled by a female employee, it would be contrary to the equal pay requirement to pay the female employee a lower wage rate than was paid for the same job when performed by the male employee, even though employees of both sexes may not be performing the job at the same time. Payment of the lower wage rate in such circumstances is a prohibited wage differential. . . . "*

(Emphasis added.)

"These regulations are entitled to 'great deference' by the courts in applying the Equal Pay Act to given factual situations," *Laffey v. Northwest Airlines, Inc.*, 185 U.S. App.D.C. 322, 342, 567 F.2d 429, 449 (1976) (footnote omitted), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

More generally, the Supreme Court, in *Corning Glass Works v. Brennan*, 417 U.S. 188, 208, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1 (1974), has stated: "The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying

purpose which Congress sought to achieve." This court has already recognized that "[t]he Act was intended as a broad charter of women's rights in the economic field. It sought to overcome the age-old belief in women's inferiority and to eliminate the depressing effect on living standards of reduced wages for female workers and the economic and social consequences which flow from it." *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. 1970), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).

On the basis of the district court's findings, we therefore conclude that Mrs. Martin and Mrs. Adams were entitled to the same wages which the District would have paid a man of comparable seniority, for the periods during which each replaced Mr. Nye at the junior and senior high schools. Accordingly, the order of the district court dismissing the Secretary's action will be modified, pursuant to 28 U.S.C. § 2106, with respect to these two women, awarding to Mrs. Martin $1435.08, with 6% interest, and to Mrs. Adams $1450.88, with 6% interest, in unpaid wages for the period each replaced Mr. Nye in an afternoon shift maintenance position.[5]

---

5. The amounts of these awards granted to Mrs. Martin and Mrs. Adams were supplied by a stipulation of counsel made at the suggestion of this court. See Clerk's letter of April 6, 1979, to counsel and F.R.A.P. 10(e). This stipulation provides, *inter alia*:

"2. . . . the parties agree that the amount of backwages owed to the two women for the specified periods would be:

(a) Lovella Adams, as of 3/31/76, for the period 1/1/75 to 3/31/76
————————————— $1,450.88
(b) Camille Martin, as of 12/31/74, for the period 12/31/73 to 12/31/74
————————————— $1,435.08

"3. The parties agree that any restraint upon the withholding of backwages set forth in paragraph 2(a) and (b) above would also include an additional amount of 6% interest per annum up to the date of payment of such backwages.

"4. By entering into this stipulation, neither party waives arguments made on appeal as to whether all of defendant's female custodial workers are entitled to damages accrued during the entire back wage period for violations of the Equal Pay Act, 29 U.S.C. 206(d)."

The complaint is based on 29 U.S.C. § 217 and makes no claim for liquidated damages. See *Brown v. Minngas Co.*, 51 F.Supp. 363 (D.C.Minn.1943). Furthermore, the district court's findings and conclusions, including those quoted below, make clear that it believed the defendant had acted in good faith and had reasonable grounds for believing that its action was not a violation of 29 U.S.C. § 206(d):

"We find, therefore, that the male maintenance personnel assigned to the late afternoon shifts at the junior and senior high schools performed jobs that were different than the jobs performed by the female cleaning personnel and we find that the wage differential was justified because of the difference in the jobs.

"The defendant has, therefore, justified the difference in pay between the late afternoon cleaning personnel, who are predominantly female, and the maintenance personnel, who are predominantly male.

"The action will, therefore, be dismissed."

Under these circumstances, Mrs. Adams and Mrs. Martin are not entitled to liquidated damages under 29 U.S.C. § 216(c). See *Yadav v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206, 1208 (5th Cir. 1976).

In other respects, the order of the district court will be affirmed, so that it shall be modified to read as follows:

And now, May 21, 1978, it is ordered that plaintiff shall recover (a) $1435.08 on behalf of Camille Martin as unpaid compensation to which she is entitled for the period December 1973 to December 1974, with interest at 6% from December 1974 to this date, and (b) $1450.88 on behalf of Lovella L. Adams for the period from January 1975 to March 1976, with interest at 6% from March 1976 to this date, and, further, that in all other respects the within complaint is dismissed. Each party shall bear its own costs.

Each party shall bear its own costs in this court.